# IN THE COURT OF APPEALS OF IOWA

No. 21-1484
Filed January 12, 2022

**IN THE INTEREST OF X.H., T.H., and L.H.,**
**Minor Children,**

**H.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,
District Associate Judge.

        The mother appeals the termination of her parental rights to three of her
children. **AFFIRMED.**

        Karen A. Taylor, Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

        Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor children.

        Considered by Mullins, P.J., Ahlers, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**POTTERFIELD, Senior Judge.**

The mother appeals the termination of her parental rights to three of her children,[1] born in 2013, 2014, and 2017.[2] The juvenile court terminated her parental rights as to all three children under Iowa Code section 232.116(1)(g) and (f) (2021). Here, the mother argues the State failed to prove the children could not be returned to her care at the time of the termination hearing, the loss of her rights is not in the children's best interests, statutory factors weigh against terminating her parental rights, and the juvenile court should have established a guardianship with the paternal grandmother instead of terminating her rights. Our review is de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

"When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). We consider termination under paragraph (f).[3] The mother only challenges the fourth

---

[1] The mother was pregnant with a fourth child at the time of the termination hearing, due to be born in October 2021. The father of the three children at issue here is not the father of the fourth child.

[2] The father's parental rights were terminated as to the oldest child a number of years ago—before the youngest two were born. His rights to the youngest two were terminated along with the mother's. He does not appeal.

[3] The juvenile court also terminated under paragraph (g). Section 232.116(1)(g) allows for termination when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

element—whether the State proved the children could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing").

At the termination trial in June and July 2021, the mother admitted she used methamphetamine off and on for a period of approximately twenty years and agreed she cannot safely parent when she is actively using the drug. The fighting issue was whether the mother continues to use methamphetamine. She admitted she was using multiple times each day at the time of the children's removal—in October 2019—and that she used a couple times between November 2019 and when she entered residential treatment in January 2020. But even after leaving treatment in March 2020, the mother's sweat patches continued to test positive for methamphetamine on a regular basis. She tested positive for methamphetamine in June and then again in September. After being asked to drug test in early February 2021, the mother admitted to using methamphetamine. And she tested

---

(4) There is clear and convincing evidence that an additional
period of rehabilitation would not correct the situation.

The mother has not previously lost her parental rights to a child—only the father has. Based on this fact, in its written closing argument, the State "concede[d] it did not meet its burden in regards to the mother under Iowa Code [section] 232.116(1)(g)." The State reiterates that position in its response on appeal. Without the State pursuing termination under paragraph (g), we question the juvenile court's decision to terminate the mother's rights under that ground. *In re M.W.*, 889 N.W.2d 675, 681 (Iowa Ct. App. 2016) ("The legislature has enacted a comprehensive scheme specifying the exclusive grounds upon which *the State* can seek to terminate a parent's rights." (emphasis added)); *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("The burden remains on the State to prove the grounds for termination."). *Cf. In re R.T.*, No. 17-1036, 2017 WL 4050995, at *2 n.5 (Iowa Ct. App. Sept. 13, 2017) (declining to terminate parental rights on alternative grounds because "[t]he State [did] not ask us to affirm on these grounds").

positive again in April. But she also provided a number of hair-stat and urinalysis drug tests that were negative for illegal substances and, relying in part on those negative tests, she disputes each of her positive sweat-patch tests. She claimed that her positive sweat-patch tests were the result of sleeping on a mattress on which she and her husband previously used and "spilled" methamphetamine.[4] The mother offered no evidence to support that sweat patches could provide false positives in such a scenario. Plus, if the mattress caused the positive results, it is unclear why the mother also had a positive sweat patch before she moved the old mattress into her new apartment[5] and why the husband never tested positive.

Considering the logical inconsistency in the mother's claim about the mattress's role in the positive tests and her history of deception to the court, the juvenile court found, "The ultimate question is whether the Court finds Mother's participation in services and claims of sobriety more credible than the objective drug screen tests which shows ongoing methamphetamine [use] throughout the case. The Court finds the objective testing, especially considering Mother's history of deception and minimization of issues, to be more credible." Based on our review of the record and the juvenile court's credibility findings, *see In re A.M.*, 843 N.W.2d

[4] The husband testified, "We used our entire time that we were using together, we used in our bedroom on that mattress. Drugs got spilled on it, we sweat on that on a regular basis, and up until [May 21, 2021], we were still using that same mattress."

[5] The husband testified the mother's negative sweat patch in May 2020 supported the idea that her positive sweat tests were due to the old mattress because the mother was staying at the home of the maternal grandmother—not sleeping on the old mattress—during that time period. The mother agreed in part, testifying she did not start sleeping on the old bed again until she moved into her apartment in August 2020. But then the drug-stained mattress could not be the cause of the mother's positive sweat patch in June 2020.

100, 110 (Iowa 2014), we conclude the mother continues to use methamphetamine. And, as she recognized, she cannot safely parent the children while doing so. *See, e.g.*, *In re O.P.*, No. 20-0995, 2020 WL 5946390, at *2 (Iowa Ct. App. Oct. 7, 2020) (citing *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the child[] in the parent's care.")). The children could not be returned to her care at the time of the termination hearing. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new child-in-need-of-assistance adjudication). So termination is appropriate under paragraph (f).

In passing, the mother states the loss of her rights is not in the children's best interests. She conflates the best-interests analysis under subsection 232.116(2) with the discretionary factors in subsection 232.116(3). But the State bears the burden to prove termination is in the children's best interests, while the parent must prove a factor in subsection (3) makes termination unwarranted. *See A.S.*, 906 N.W.2d at 476 (holding the burden shifts from the State to the parent to establish an exception to termination). Considering the "child[ren]'s safety and need for a permanent home," *see In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially), we find termination is in the children's best interests. As of the last day of the termination hearing in July 2021, the children had been removed from the mother's care for approximately twenty-one months. The mother had made progress in achieving sobriety, but she was not yet ready

to parent the children full time. Termination of her rights will allow the children to achieve permanency, which is in their best interests.

Next, the mother argues the juvenile court should have decided not to terminate her rights because the children "were residing with their paternal grandmother." *See* Iowa Code § 232.116(3)(a). Additionally, she argues leaving her rights intact would allow the children to have a relationship with their half-sibling, whom the mother expected to deliver in October 2021. In the same vein, the mother argues her "significant bond" with the children precluded termination. *See id.* § 232.116(3)(c). The juvenile court declined to exercise its discretion to apply an exception to save the parent-child relationship, concluding:

> While Mother argued she and the children have a close relationship, she offered no evidence that the child[ren] could not overcome the severance of this relationship. After considering the children's age, [their] need for permanency, [their] placement in a pre-adoptive home which is meeting their needs and the children feel[] comfortable in, the length and extent of services provided to both parents, [the] Court finds there are no legal exceptions in Iowa Code Section 232.116(3) which would argue against termination.

We agree. The mother did not establish an exception that militates against termination of her rights.

Finally, the mother argues the juvenile court should have placed the children in a guardianship with the paternal grandmother—who had custody of the children throughout the juvenile court proceedings—instead of terminating her parental rights. *See* Iowa Code §§ 232.117(5) ("If after a hearing the court does not order the termination of parental rights but finds that there is clear and convincing evidence that the child is a child in need of assistance, . . . the court may adjudicate the child to be a child in need of assistance and may enter an order in accordance

with the provisions of . . . [section] 232.104."); 232.104(2)(d)(1) (allowing the court to enter a permanency order "[t]ransfer[ring] guardianship and custody of the child to a suitable person."). "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477. And the children's young ages and the lack of information about the relationship between the paternal grandmother and the mother also weigh against a guardianship. *See id.* at 478 (distinguishing case where a guardianship was appropriate because the child was ten years old and able to express a preference for a guardianship and the parent and guardian shared a "close, mature, healthy relationship that is free of conflict" with the present facts, where a guardianship was not appropriate because the child was two years old and too young to express a preference and neither the parent nor the guardian testified about the possible guardianship). We cannot conclude the children should be placed in a guardianship in lieu of termination of the mother's rights.

We affirm the termination of the mother's parental rights as to all three children under section 232.116(1)(f).

**AFFIRMED.**